**SIERRA CLUB, a non-profit California Corporation, et al., Plaintiffs-Appellants,**

v.

**Gilbert STAMM, Individually and as Commissioner, U. S. Bureau of Reclamation, et al., Defendants-Appellees,**

and

**State of Utah: Central Utah Water Conservancy District, et al., Defendants-Intervenors-Appellees.**

No. 74–1425.

United States Court of Appeals, Tenth Circuit.

Nov. 29, 1974.

Rehearing Denied Dec. 23, 1974.

Dennis F. Olsen, Salt Lake City (H. Anthony Ruckel, Denver, Colo., Curtis K. Oberhansly, and Kinghorn, Oberhansly & O'Connell, Salt Lake City, Utah, on the brief), for plaintiffs-appellants.

Dirk D. Snel, Atty., Dept. of Justice (Wallace H. Johnson, Asst. Atty. Gen., C. Nelson Day, U. S. Atty., Raymond N. Zagone and Andrew F. Walch, Attys., Dept. of Justice; and Ronald L. Staten, Atty., Dept. of the Interior, of counsel, on the brief), for defendants-appellees.

Edward W. Clyde, Salt Lake City, Utah (Dallin W. Jensen, Asst. Atty. Gen., and Joseph Novak, Provo, Utah and Hugh W. Colton, Vernal, Utah, on the brief), for defendants in intervention-appellees.

Before HILL, McWILLIAMS and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

This proceeding was instituted in the United States District Court for the District of Utah by four nonprofit environmental corporations against the Secretary of the Interior, Rogers C. B. Morton, and certain officers of the Bureau of Reclamation. The State of Utah and its state water districts later intervened as intervening defendants. The plaintiffs sought declaratory judgment and injunctive relief based on the alleged failure of the defendants to file a Final Environmental Statement which complied with the provisions of the National Environmental Policy Act. 42 U.S.C. § 4321 *et seq.*

After a six-day evidentiary hearing the trial court found and concluded that the Final Environmental Statement prepared and filed by the defendants did comport with the statute and accordingly entered judgment dismissing the complaint with prejudice. Plaintiffs now appeal. Our study of the record leads us to conclude that the trial court did not err in its determination that the Final Environmental Statement with which we are here concerned met the requirements of the statute, and we therefore affirm. Some background facts are necessary to an understanding of the matter.

The Central Utah Project is a plan to collect, develop and divert water in the Bonneville and Uinta Basins of central Utah for municipal, industrial, agricultural and recreational purposes. The project is an "on-going" one in the sense that certain of its components were completed and in use, even before the advent of the National Environmental Policy Act; whereas, the entire project as presently contemplated will in all probability not be finally completed till sometime in the next century.

The Central Utah Project is composed of six units, one of which is the Bonneville Unit, and it is the Bonneville Unit with which we are here concerned. The Bonneville Unit involves the collection of water in the Uinta Basin by a series of dams, reservoirs, aqueducts, and the like, with the water thus collected being transferred across the Wasatch Mountains for use in the Bonneville Basin. This particular unit is about 16% completed at the present time.

The Bonneville Unit, where construction activity is now focused, is itself broken down into six component systems, one of which is the Strawberry Aqueduct and Collection System. This latter system in turn embraces the so-called Currant Creek Dam and Reservoir. The Government has most recently been involved in the letting of contracts preparatory to building the Currant Creek Dam, and it is this fact which has precipitated the present controversy. The immediate relief sought by the plaintiffs was an injunction to prohibit any further action in connection with the Currant Creek Dam. As indicated, plaintiffs' claim is based on their belief that the Final Environmental Statement filed by the defendants is inadequate. Let us look then at the Final Environmental Statement here under attack.

The Statement was prepared by the Bureau of Reclamation and the Department of the Interior and filed with the

Council on Environmental Quality on August 2, 1973. The Secretary of the Interior subsequently announced on November 8, 1973, that construction would proceed on the Currant Creek Dam as "the next step in the construction of the Strawberry Aqueduct." Although there was perhaps some misunderstanding, at least initially, as to the intended scope of the Statement, it would appear that now it is agreed that the Statement is intended to be a final one only as to the Strawberry Aqueduct and Collection System, even though the Statement makes reference to other components of the Bonneville Unit, as well as to other units within the Central Utah Project. The Statement clearly indicates that final impact statements will be filed on the other systems of the Bonneville Unit and the Central Utah Project before work commences on those phases. The Statement is a bulky one, consisting of over 800 pages of single-spaced printing. The Statement itself is subdivided into the following headings: Description of the proposal; description of the environment; environmental impacts of proposed action; mitigating measures and air and water quality aspects; unavoidable adverse effects; short and long term environmental uses; irreversible and irretrievable commitments of resources; alternatives to proposed action; and consultation and coordination with others. The Statement then contains rather detailed "responses" by the Department of the Interior to "objections" earlier made to the draft impact statement.

The plaintiffs' attack on the Statement is fourfold: (1) The Statement is too narrow in its scope and should include the cumulative and collective environmental impact of the entire Central Utah Project; (2) the Statement is incomplete in that it is a *final* statement as to the Strawberry Collection System only, and that it should, but does not, encompass all increments of the Bonneville Unit; (3) the Statement fails to adequately discuss alternatives for obtaining water within the Bonneville Ba-

sin for municipal and industrial purposes; and (4) the Statement fails to include and discuss a cost-benefit ratio. Before discussing each of the matters thus raised, let us first ascertain what the statute declares should be included in a Final Environmental Statement.

Section 4332, 42 U.S.C. provides as follows:

" * * * [A]ll agencies of the Federal Government shall * * * include in every recommendation or report on proposals for legislation and other *major Federal actions* significantly affecting the quality of the human environment, a detailed statement by the responsible official on

"(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." (Emphasis added.)

The plaintiffs first attack the Statement on the ground that it is too narrow in scope, and should be a final statement at least for the entire Bonneville Unit, if not indeed for the entire Central Utah Project. As indicated above, the Statement here involved is intended to be a *final* statement as to the Strawberry Aqueduct and Collection System only, and, according to the plaintiffs, the Strawberry system is not in itself an independent "major Federal action," as mentioned in 42 U.S.C. § 4332, but only an increment of the Bonneville Unit and the Central Utah Project.

We deem the question as to whether the Strawberry system is in itself an in-

dependent "major Federal action," and whether the Statement should have been a "final" impact statement for the Bonneville Unit, or perhaps even the entire Central Utah Project, to be, in a sense, a mixed question of fact and law. By that we mean that the issue as to whether the Strawberry system is a unit unto itself, and can stand on its own two feet, or, on the contrary, whether it is so intertwined with the rest of the Bonneville Unit and the Central Utah Project that it is but an increment of the larger plan, is essentially one of fact. Then whether the "facts" as thus found by the trial court permit the Strawberry system to be classified as an independent "major Federal action" is essentially a question of law.[1] Let us now examine the trial court's findings on the issue as to whether the Strawberry system is an independent unit, or not.

Finding No. 16 reads as follows:

"The Strawberry Aqueduct and Collection System has an independent utility of its own as a collection and conveyance system of waters from the designated Uinta Mountain streams for storage in the enlarged Strawberry Reservoir for release and use in the Bonneville Basin. Such system can operate and function separately from the remaining unconstructed systems of the Bonneville Unit or other units of the Central Utah Project. The termini of the Strawberry Aqueduct and

Collection System, comprising the Soldier Creek Dam on the westerly end, and the Upper Stillwater Reservoir on the easterly end, delineate a reasonable and logical segment of the Bonneville Unit for discussion and analysis of the environmental impacts resulting therefrom, which remain unchanged regardless of the systems to be constructed for delivery and use of project waters within the Bonneville Basin. The major federal action of Defendant Secretary Morton was limited to the approval of immediate construction of the Currant Creek Dam and to the continuation of the construction of the Strawberry Aqueduct and Collection System on a logical construction schedule. The detailed discussion and analysis of the Strawberry Aqueduct and Collection System contained in the FES and the explanation and discussion of the entire Bonneville Unit therein fully complies with the requirements of NEPA, and the applicable guidelines of the Council on Environmental Quality as to the scope, nature and extent of the project to be covered thereby."

In our view, the trial court's finding as set forth immediately above finds more than adequate support in the record, and on appeal should be, and is, accepted by us. The next question then is whether the Strawberry system as thus "found" by the trial court can be

---

1. Scientists' Inst. for Pub. Info., Inc. v. Atomic Energy Com'n, 156 U.S.App.D.C. 395, 481 F.2d 1079, at 1095 (1973), footnote 68, reads as follows:

"The decision whether the time is ripe for a NEPA statement on an overall research and development program is a mixed question of law and of fact. It concerns a question of law as to interpretation of the statutory phrase 'major Federal action significantly affecting the quality of the human environment' as it pertains to technology research and development programs. As indicated in text, we interpret the statute to provide for a balancing approach which takes into account the Act's policies in favor of information

which is both meaningful and timely. In addition, the decision involves a question of fact as to application of that balancing test to the realities of a specific program at a specific time.

"With respect to judicial review of such mixed questions of law and fact, the Supreme Court has authorized a practical standard of review, the 'rational basis' test, under which the court will reverse the agency's decision if it has no warrant in the record and no reasonable basis in law. NLRB v. Hearst Publications, Inc., 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); Hanly v. Kleindienst, 2 Cir., 471 F.2d 823, 829 (1972)."

deemed an independent "major Federal action" as that term is used in 42 U.S. C. § 4332. We agree with the trial court that the Strawberry system does constitute such Federal action. In support of our conclusion *see* such cases as Sierra Club v. Calloway, 499 F.2d 982 (5th Cir. 1974), and Environmental Defense Fund, Inc. v. Armstrong, 352 F. Supp. 50 (N.D.Cal.1972), supplemental opinion, 356 F.Supp. 131 (N.D.Cal. 1973), aff'd on appeal, 487 F.2d 814 (9th Cir. 1973). Brief reference to these cases will prove helpful.

The *Calloway* case concerns the Trinity River Project in Texas. This is a tremendous undertaking which envisions a straightening of the Trinity River and the construction of a channel of a width of 200 feet and a depth of 12 feet from the Houston Ship Channel in Galveston Bay to Forth Worth, a distance of 363 miles. The latest projected cost estimate is $1,356,000,000. The Wallisville Project involves the construction of a dam at the mouth of the Trinity River. The final impact statement related to the Wallisville Project, and in the trial court the environmentalists obtained injunctive relief on the ground that the impact statement did not comply with the statute because the Wallisville Project was not in and of itself an independent "major Federal action," but merely an increment of the Trinity River Project, and that a final impact statement for the whole project was necessary before work could be commenced on the Wallisville Project. In reversing on appeal, the Fifth Circuit declared as follows:

"We conclude that the Wallisville and Trinity River Projects are not interdependent. The nexus between the projects is not such as to require an EIS evaluation of the Trinity Project as a condition precedent to an EIS evaluation of Wallisville. The Wallisville EIS should speak for itself. Wallisville is a separate viable entity. It should be examined on its own merits. Although it has been made com-

patible in certain of its features with Trinity it is not a mere component, increment, or first segment of Trinity. The court erred in so holding. [499 F.2d at 990]

\* \* \* \* \* \*

"The court's decision linking Wallisville with Trinity and requiring the Wallisville EIS to evaluate not only the environmental impact of Wallisville, but also to assess some or all of the effects of the Trinity Project, and the latter's effect upon Wallisville, cannot be sustained in view of our holding that the Wallisville EIS must be separately considered and determined.

"It was error to make Wallisville an evidentiary hostage of Trinity. The holding if permitted to stand could well spell the doom of the Wallisville Project in view of the continuing uncertainties attending the Trinity Project." [499 F.2d at 993]

In *Armstrong*, the trial court held that the final impact statement on the New Melones Project in California was sufficient to meet the "major Federal action" requirement of 42 U.S.C. § 4332, and that the New Melones Project did not have to await completion of the comprehensive study of the bigger and more inclusive Central Valley Project. In thus holding that court, citing Jicarilla Apache Tribe of Indians v. Morton, 471 F.2d 1275 (9th Cir. 1973), declared as follows:

" \* \* \* So long as each major federal action is undertaken individually and not as an indivisible, integral part of an integrated state-wide system, then the requirements of NEPA are determined on an individual major federal action basis. Plaintiffs' suggestion that there is need for a comprehensive study of the Central Valley Project should be made to the Congress, and not to the Court."

In sum, then, we agree with the trial court that the Strawberry system in and of itself constitutes a "major Federal ac-

tion" and that it is not a mere increment of either the Bonneville Unit or the Central Utah Project requiring a final impact statement for something more than the Strawberry system before work may be commenced on the Currant Creek Dam. Before leaving this phase of the case, brief mention should be made of the Indian Deferral Agreement signed by the United States and the Ute Indians in 1965.

■ The Ute and Ouray Indian reservations lie downstream from the Bonneville Unit. For the Strawberry system to function it was necessary to obtain a deferral of certain water rights held by the Indians. By contract, the Indians agreed to defer their present right to an amount of irrigation water until the development of the Ute Indian Unit, which is one of the six units of the Central Utah Project. The Ute Indian Unit, as a matter of fact, is the ultimate segment of the Central Utah Project, and if that phase is not completed by the year 2005, then, according to the agreement, the Indians are to have immediate use of all deferred water or receive an equitable adjustment.

The plaintiffs argue that the Indian Deferral Agreement legally obligates the construction of the Ute Indian Unit and that such is proof positive that the Strawberry system is not a major Federal action in itself, but is only a dependent increment in the overall project. In this regard the trial court found, however, that the Indian Deferral Agreement did not "mandate or require the construction of other features of the Bonneville Unit nor other units of the Central Utah Project, since the terms thereof [i.e., Indian Deferral Agreement] can be fulfilled without such construction." As indicated, the agreement itself does provide that if replacement water is not ultimately furnished, then the Indians are to have immediate use of their deferred rights or otherwise receive "equitable adjustment." We agree with the trial court that the fact of the Indian Deferral Agreement does not in itself render the Strawberry system a mere increment of the total plan of the Central Utah Project.

Plaintiffs' remaining grounds for reversal relate to the internal sufficiency of the Statement, the plaintiffs contending that the Statement does not contain a sufficient discussion of alternatives and does not contain a discussion of environmental cost-benefit ratio. The trial court in reviewing the matter concluded that the Statement was not deficient in these two particulars. We agree.

In National Helium Corporation v. Morton, 486 F.2d 995 (10th Cir. 1973), we held that the "rule of reason" should be applied in a judicial review testing the sufficiency of a final environmental statement and declared that a judicial review of a final environmental statement is limited to the following:

"(1) Whether FES discusses all of the five procedural requirements of NEPA.

"(2) Whether the environmental impact statement constitutes an objective good faith compliance with the demands of NEPA.

"(3) Whether the statement contains a reasonable discussion of the subject matter involved in the five required areas."

■ The concurring opinion in *Morton* agreed that "judicial review of an impact statement is limited to a determination of whether the statement is a "good faith, objective, and reasonable" presentation of the subject areas mandated by NEPA," and that opinion went on to add that in thus testing the sufficiency of a final environmental statement, the courts should not engage in "second guessing" the experts who have prepared the statement. Our study of the very elaborate final environmental statement filed for the Strawberry system leads us to conclude that there is a "good faith, objective, and reasonable" discussion of alternatives. Over 100 pages in the Statement are devoted to a consideration of alternatives to the entire Bonneville Unit plan, including pos-

sible alternatives to Currant Creek Dam, that being the defect in the Statement specifically complained of by the plaintiffs. We believe such discussion to comport with the statute. In Life of the Land v. Brinegar, 485 F.2d 460, at 472 (9th Cir. 1973), the following pertinent comment appears:

"NEPA's 'alternatives' discussion is subject to a construction of reasonableness. N.R.D.C., Inc. v. Morton, *supra*, 148 U.S.App.D.C. 5, 458 F.2d at 834. Certainly, the statute should not be employed as a crutch for chronic fault-finding. Accordingly, there is no need for an EIS to consider an alternative whose effect cannot be reasonably ascertained, and whose implementation is deemed remote and speculative. *Id.* at 834. Rather, the EIS need only set forth those alternatives 'sufficient to permit a reasoned choice.' *Id.* at 836. This has been done. *See also* Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S.App.D.C. 380, *supra*, 463 F.2d at 787; Pennsylvania Environmental Council v. Bartlett, 315 F.Supp. 238, 250 (M.D.Pa.1970)."

■■ As concerns cost-benefit ratio, the National Environmental Protection Act only requires that "presently unquantified environmental amenities and values * * * be given appropriate consideration in decisionmaking along with economic and technical considerations." 42 U.S.C. § 4332(B). *See also* Environmental Defense Fund, Inc. v. Armstrong, 352 F.Supp. 50 (N.D.Cal. 1973). This in our view does not require the fixing of a dollar figure to either environmental losses or benefits. Environmental Defense Fund v. Tennessee Valley Authority, 371 F.Supp. 1004 (E.D.Tenn.1973), aff'd, 492 F.2d 466 (6th Cir. 1974). Our study of the impact statement leads us to conclude that the cost-benefit matter is adequately covered therein. *See* Environmental Defense Fund, Inc. v. Corps Engineers of the United States Army, 492 F.2d 1123 (5th Cir. 1974).

Judgment affirmed.