Paul MANYGOATS et al., Appellants,

v.

Thomas S. KLEPPE et al., Appellees,

and

Exxon Corporation, Intervenor-Appellee.

No. 77–1001.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 15, 1977.

Decided June 17, 1977.

Richard W. Hughes, Shiprock, N. M., for appellants.

John J. Zimmerman, Washington, D. C. (Peter R. Taft, Asst. Atty. Gen., Washington, D. C., Victor R. Ortega, U. S. Atty., Albuquerque, N. M., Charles N. Estes, Asst. U. S. Atty. and Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellees.

Robert M. Perry, Houston, Tex. (Lynn H. Slade, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., was with him on the brief), for intervenor-appellee.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Seventeen members of the Navajo Tribe of Indians seek to enjoin the performance of an agreement whereby the Navajo Tribe granted to intervenor Exxon Corporation the right to explore for, and mine, uranium on tribal lands. Defendant Secretary of the Interior approved the agreement. Plaintiffs base their claim on the asserted inadequacy of the Environmental Impact Statement, EIS, required by the National Environmental Policy Act, NEPA, 42 U.S.C. § 4321 et seq. They appeal from the denial of a preliminary injunction and the later dismissal of the action for nonjoinder of an indispensable party, the Navajo Tribe. We affirm the denial of the preliminary injunction and reverse the dismissal of the action.

In January, 1974, the Navajo Tribal Council, upon the unanimous recommendation of its Advisory Council, approved the agreement by a vote of 46–2. Section 396a, 25 U.S.C., requires that the Secretary approve leases for mining on unallotted lands within an Indian reservation. Section 415, 25 U.S.C., imposes a similar requirement on leases for the development of natural resources.

■ An EIS is required when major federal action significantly affects the human environment, 42 U.S.C. § 4332(2)(C). The requirement applies to leases of Indian lands. *Davis v. Morton*, 10 Cir., 469 F.2d 593, 597–598. The Bureau of Indian Affairs, BIA, prepared an EIS pertaining to the agreement in question and the Secretary considered it in making his decision to approve the agreement.

■ Appellees argue that we should not reach the EIS issue because the action may not be sustained in the absence of the Tribe. Neither the United States, which holds the tribal lands in trust for the Indians, nor the Navajo Tribe, may be sued without its consent. *Cherokee Nation v. State of Oklahoma*, 10 Cir., 461 F.2d 674, 681, cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489; see also *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 168–169, 93 S.Ct. 1257, 36 L.Ed.2d 129. Because of its immunity from suit the Na-

vajo Tribe may not be made an involuntary party to the action. We must consider the indispensability question because of its importance to the power of the court to proceed with the action.

Rule 19, F.R.Civ.P., covers joinder of parties. Under Subsection (a) a court must first determine whether an absent party has sufficient interest in the action to make it a necessary party within stated criteria. The financial and other benefits to the Tribe under the Exxon agreement give the Tribe sufficient interest to satisfy the requirements of Subsection (a)(2)(i). Plaintiffs say that those requirements are not determinative because the Secretary adequately represents the Tribe. Plaintiffs rely primarily on *Heckman v. United States,* 224 U.S. 413, 444–445, 32 S.Ct. 424, 56 L.Ed. 820. The Supreme Court there held that Indian grantees of land were not indispensable parties in a suit by the United States to cancel conveyances. The Court said that the Indians were adequately represented by their guardian, the United States.

■ In the instant case the duties and responsibilities of the Secretary may conflict with the interests of the Tribe. The Secretary must act in accord with the obligations imposed by NEPA. In acting upon the Navajo-Exxon agreement the Secretary, to further the national objectives declared by NEPA, must have and consider an EIS. The national interest is not necessarily coincidental with the interest of the Tribe in the benefits which the Exxon agreement provides. When there is a conflict between the interest of the United States and the interest of Indians, representation of the Indians by the United States is not adequate. See *State of New Mexico v. Aamodt,* 10 Cir., 537 F.2d 1102, 1106, cert. denied, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572.

■ A finding that the Tribe is a necessary party under Rule 19(a) does not complete the inquiry. When it is determined that a party is necessary, a decision must then be made whether he is an indispensable party whose absence requires the dismissal of the suit under Rule 19(b). See *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 108–109, 88 S.Ct. 733, 19 L.Ed.2d 936. The Rule 19(b) test is "whether in equity and good conscience the action should proceed." See *Wright v. First National Bank of Altus, Oklahoma,* 10 Cir., 483 F.2d 73, 75.

In their assertion of indispensability, the appellees rely on *Tewa Tesuque v. Morton,* 10 Cir., 498 F.2d 240, cert. denied, 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440. In that case Indian plaintiffs sought the cancellation of a lease by the Tribe to a development company. An earlier case, *Davis v. Morton,* 10 Cir., 469 F.2d 593, related to the same lease. In *Davis* non-Indians attacked the lease because of the failure of federal officials to obtain the impact statement required by NEPA. We held that leases of Indian lands were covered by NEPA. *Davis* did not present or discuss indispensability of the Tribe.

From the facts stated in the *Tewa Tesuque* opinion it appears that the plaintiffs sought the cancellation of the lease because of the lack of an environmental impact statement. The court said, 498 F.2d at 243, that the failure to file an impact statement was rendered moot by *Davis* and went on to affirm the trial court's dismissal of the action on the ground that the Tribe was an indispensable party. In so holding the court discussed, 498 F.2d at 242–243, the four factors mentioned in Rule 19(b) and rejected each as a ground for permitting the action to proceed in the absence of the Tribe.

In *Tewa Tesuque* the attack was on the lease and the action sought cancellation. In the instant case the attack is on the adequacy of the impact statement which the Secretary must consider before approving or rejecting the Navajo-Exxon agreement. The plaintiffs seek relief from the consequences of action based on the inadequate EIS. A holding that the EIS is inadequate does not necessarily result in prejudice to the Tribe. The only result will be a new EIS for consideration by the Secretary. The requested relief does not call for any action

by or against the Tribe. Our attention is called to no tribal remedies or procedures available to the plaintiff for attack on a federal EIS.

Dismissal of the action for nonjoinder of the Tribe would produce an anomalous result. No one, except the Tribe, could seek review of an environmental impact statement covering significant federal action relating to leases or agreements for development of natural resources on Indian lands. NEPA is concerned with national environmental interests. Tribal interests may not coincide with national interests. We find nothing in NEPA which excepts Indian lands from national environmental policy.

 The controlling test of Rule 19(b) is whether in equity and good conscience the case can proceed in the absence of the Tribe. The test should be applied by the district court which should state the facts and reasons upon which it acts. See *Wright v. First National Bank of Altus, Oklahoma,* 10 Cir., 483 F.2d 73, 75. We are considering the case at the appellate level and are asked to review the order of the district court which held the EIS adequate and denied a preliminary injunction. In equity and good conscience the case should and can proceed without the presence of the Tribe as a party.

Consideration of the adequacy of the EIS requires that we first examine the Navajo-Exxon agreement. The objective of the agreement is to explore for, discover, mine and process uranium deposits which may exist on 400,000 acres of tribal land in northwestern New Mexico. The project has two phases, (1) exploration, and (2) mining and milling. Plans for the first year's exploration must be coordinated with the Tribe, submitted to and approved by the BIA and by the Secretary of the Interior acting through the United States Geological Survey (USGS). The submission is required both by the prospecting permit and the Secretary's regulations. See 25 C.F.R. § 177.6 and 30 C.F.R. § 231.10(a) and (b). The plan must be responsive to the protection of nonmineral resources and surface reclamation as specified in the Permit,

§ III(12), pp. 14–15. No operations may be conducted except under an approved plan. 30 C.F.R. § 231.10(a).

If Exxon elects to make the lease effective to any designated development block, it must obtain federal approval of a detailed plan of operations including environmental preservation and surface reclamation. See Lease §§ IX(5) and XI, pp. 8–10, and Regs. 25 C.F.R. § 177.7 and 30 C.F.R. § 231.10(a) and (c). All operations must accord with an approved plan. 30 C.F.R. § 231.10(a).

Exxon must take whatever action may become necessary to protect the public health and environment and to meet the requirements of federal and state air and water pollution controls, operating regulations, and the orders of the federal mining supervisor. 30 C.F.R. §§ 231.4 and 231.73. Operations may be suspended if they threaten immediate, serious, or irreparable damage to the environment, 30 C.F.R. § 231.73(c), and prohibited or restricted if they affect specified conditions. 25 C.F.R. § 177.4(d). The permit and lease provisions coupled with the regulations establish continuing federal control with required specific consideration of the environmental aspects of the project.

BIA prepared the EIS. The Secretary considered the EIS before approving the Navajo-Exxon agreement. NEPA requires a statement covering (1) environmental impact of the proposed action, (2) unavoidable adverse environmental effects, (3) alternatives to the proposed action, (4) the relationship between local short-term uses of the environment and maintenance of long-term productivity, and (5) irreversible and irretrievable commitments of resources involved in the proposed action. See 42 U.S.C. § 4332(2)(C). In *National Helium Corporation v. Morton,* 10 Cir., 486 F.2d 995, cert. denied, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772, we rejected the concept that an environmental statement is judicially reviewable on its merits to determine sufficiency, and held, Ibid. at 1002–1003, that judicial review of an environmental impact statement is limited to:

"(1) Whether [the statement] discusses all of the five procedural requirements of NEPA.

(2) Whether the environmental impact statement constitutes an objective good faith compliance with the demands of NEPA.

(3) Whether the statement contains a reasonable discussion of the subject matter involved in the five required areas."

In *Sierra Club v. Stamm,* 10 Cir., 507 F.2d 788, 793, we said that the rule of reason must be applied in a judicial testing of an environmental impact statement, that the judicial concern is whether the statement is a good faith, objective, and reasonable presentation of the subject areas mandated by NEPA, and that the court should not second-guess the experts.

■ An EIS is required only in the event of proposed federal action and must be tailored to that action. See *Kleppe v. Sierra Club,* 427 U.S. 390, 96 S.Ct. 2718, 2726–2727, 49 L.Ed.2d 576. The kind of impact statement depends on the kind of federal action. *Aberdeen & Rockfish R. Co. v. SCRAP,* 422 U.S. 289, 322, 95 S.Ct. 2336, 45 L.Ed.2d 191. In the instant case the federal action is the approval of the Navajo-Exxon agreement relating to the prospecting permit and lease. We are concerned first with discovery and second with production of uranium. If uranium is not found, the project ends. The agreement spells out continuing federal control over exploration and detailed federal controls over mining and milling with specific directions pertaining to environmental consequences.

■ Plaintiffs specify six environmental impacts which they claim are not adequately covered by the EIS. Three of these, dewatering, tailings seepage and permanent contamination of aquifers are basically presented in the form of conflicting scientific findings. We decline to enter into this controversy of experts. It is enough that the problems were delineated with great care and informed the Secretary, as decision-maker, of environmental consequences.

A fourth relates to surface mining. The EIS was primarily concerned with underground mining because of the projected depths at which uranium is thought to be present. The likelihood of extensive surface mining is minimal. It is enough that the EIS covers the problems related to surface mining and the Secretary was advised of them when he approved the exploration features of the agreement.

Uranium mining produces an inert radioactive gas, radon, which on exposure to the atmosphere decays into a series of radioactive isotopes. For the protection of miners, fans in the mines disperse the radon. The EIS recognizes the emission of radon to the atmosphere and the possibility of air contamination in the immediate vicinity of the mines and mills. The EIS estimates daily radionuclide discharge levels from various operations, estimates meteorlogic dispersion rates, and presents expected doses to humans at various downwind unrestricted locations. The possible annual dosage is found to be of less magnitude than that deemed acceptable by the United States Nuclear Regulatory Commission. See 10 C.F.R. Part 20. The Secretary was well advised of the radon potential. The impact will be affected by the locations later selected for mine and mill sites. The agreement provides that when those sites are chosen further consideration must be given to environmental impact. For action by the Secretary on the Navajo-Exxon agreement the discussion of the radon problem is adequate.

Plaintiffs attack the EIS on the ground that it does not discuss adequately the cumulative effect of the project in conjunction with other resource developments that are now taking place, or in the future may take place in the area. It is enough to say that the EIS discusses cumulative impacts in detail. Mention is made of the location, proposed timing, and nature of other resource projects in the region. It finds no overlap in natural resource needs, discusses socio-economic impacts, and notes possible population changes. Certainty as to the cumulative effects of resource development projects requires prophecy beyond the capa-

bilities of both scientists and courts. Neither are endowed with divine inspiration. It is enough that the EIS mentions and discusses foreseeable problems.

The EIS is a comprehensive, good faith, objective, and reasonable presentation of the subject areas mandated by NEPA. *Sierra Club v. Stamm,* 507 F.2d at 793. It adequately informs the Secretary of the project's potential effect on the human environment. The Navajo-Exxon agreement requires continuing federal control over the environmental aspects of operations which will follow if exploration results in discovery which justifies mining and milling.

We affirm the denial of the preliminary injunction, reverse the judgment dismissing the action because of nonjoinder of the Tribe, and remand the case for further proceedings in the light of this opinion. Each party shall bear his own costs.