UNITED STATES COURT OF APPEALS

TENNTH CIRCUIT

CITIZEN POTAWATOMI NATION, a
federally recognized Indian Tribe,

     Plaintiff - Appellant,

v.

GALE A. NORTON,[*] Secretary of the
Interior, WILLIAM SINCLAIR, Director
of the Office of Self Governance,

     Defendants - Appellees.

No. 99-6077

ORDER

Filed July 9, 2001

Before **TACHA**, Chief Judge, **HOLLOWAY** and **SEYMOUR**, Circuit Judges.

On consideration of the petition for rehearing en banc, rehearing by the panel is

granted for the limited purpose of a modification of the panel opinion. The modified

opinion removes the sentence at the bottom of page 11 and the top of page 12 of the slip

opinion which stated: "We did not hold, however, that the United States could not

provide that proof." A copy of the modified opinion is attached to this order.

The petition for rehearing en banc having been circulated to all the judges of the

panel and all of the active circuit judges in regular service, and no request for a poll on

[*]Pursuant to Fed. R. App. P. 43(c)(2), Gale A. Norton is substituted for Bruce
Babbitt, Secretary of the Interior, as a defendant in this action.

the en banc suggestion having been made, rehearing en banc is denied.

ENTERED FOR THE COURT

Patrick Fisher, Clerk

By:

Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CITIZEN POTAWATOMI NATION, a
federally recognized Indian Tribe,

     Plaintiff - Appellant,

v.

GALE A. NORTON,[*] Secretary of the
Interior, WILLIAM SINCLAIR, Director
of the Office of Self Governance,

     Defendants - Appellees.

No. 99-6077

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-98-1324-A)**

---

Michael Minnis, Michael Minnis & Associates, PC., Oklahoma City, Oklahoma, (David
McCullough with him on the briefs) for Plaintiff-Appellant.

Arvo Q. Mikkanen, Assistant United States Attorney, Oklahoma City, Oklahoma, (Patrick
M. Ryan, United States Attorney, with him on the brief) for Defendants-Appellees.

---

Before **TACHA,** Chief Judge, **HOLLOWAY** and **SEYMOUR**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Gale A. Norton is substituted for Bruce
Babbitt, Secretary of the Interior, as a defendant in this action.

Plaintiff/appellant Citizen Potawatomi Nation (Citizen Potawatomi), a federally recognized Indian Tribe located in the Western District of Oklahoma, brought this action which the Tribe termed as one for a "mandatory injunction in the nature of mandamus" against federal officials of the United States Department of the Interior challenging their methods for calculating funding the Citizen Potawatomi Nation receives under its tribal self-governance compact. Subject matter jurisdiction was asserted under 28 U.S.C. § 1362 in that the action was brought by an Indian tribe or band with a governing body duly recognized by the Secretary of the Interior and the matter in controversy arises under the Constitution, laws or treaties of the United States. The complaint also presented an action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the Plaintiff. 28 U.S.C. § 1361.

Defendants moved to dismiss the action on the ground that the Citizen Potawatomi are unable to join three "necessary" and "indispensable" parties, tribal participants in the funding agreement. The district court agreed and granted the motion. This timely appeal ensued. We have appellate jurisdiction under 28 U.S.C. § 1291.

# I

## BACKGROUND

Under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450 et seq., the United States is authorized to enter into compacts with tribes. Pursuant to

that Act, tribes do not contract to take over specific programs; rather, tribes assume comprehensive responsibility for the planning and administration of programs and services previously provided by the United States. Essentially, the Act provides for tribal self-governance.

Once the United States enters into a compact with a tribe, the parties ordinarily negotiate an Annual Funding Agreement. In 1988, however, five tribes within the Shawnee Agency of the Bureau of Indian Affairs negotiated a formula among themselves for dividing future federal appropriations. Those tribes included the Citizen Potawatomi, the Shawnee Tribe, the Kickapoo Tribe of Oklahoma, the Sac & Fox Nation, and the Iowa Tribe of Oklahoma. Under their formula, the tribes agreed to divide (1) twenty-five percent of the funding equally; (2) twenty-five percent in proportion to total tribal enrollment; (3) twenty-five percent in proportion to resident tribal enrollment within each tribe's jurisdictional area; and (4) twenty-five percent of the funds in proportion to the amount of trust property in each tribe's jurisdiction. The United States used this formula to determine the amount of funding awarded to the tribes in their Annual Funding Agreements.

On September 23, 1998, the Citizen Potawatomi brought this action against Defendants challenging the methods they use for determining the Citizen Potawatomi's funding. Specifically, the Citizen Potawatomi challenge (1) the determination that the Shawnee Tribe and the Citizen Potawatomi share the same service area and, therefore, the

funds provided to that area; (2) the determination that the 1988 formula is static and does not change as the data change; (3) the refusal of Defendants to fund certain items of the Citizen Potawatomi that Defendants claim are "residual"; and (4) Defendants' interpretation of a "moratorium" clause, which Defendants allege prevents them from fully funding the Citizen Potawatomi.

After the Citizen Potawatomi filed this lawsuit, Defendants moved to dismiss the action on the ground that the Citizen Potawatomi had not, and could not, join as parties to the action the other tribal participants in the funding agreement; the Defendants argued that because those tribes were "indispensable," the court should dismiss the action pursuant to Fed. R. Civ. P. 19(a). The district court agreed and rejected the Citizen Potawatomi's contention that the evidence had not been sufficiently developed for the court to rule on the motion.

The court first noted that under Rule 19, it must determine whether the absent tribes are "necessary"; if they are necessary, whether joinder is "feasible"; and if not, whether the absent tribes are "indispensable." Applying this three-part test, the district court ruled that the absent tribes were necessary because complete relief was not possible without them since "as a result of the action and a possible increase in plaintiff's funding allocation, the remaining tribes would suffer detriment from which they may seek collateral relief from the plaintiff or the defendants" and because the absent tribes had an interest in the funding allocations. Order [granting motions to dismiss] at 5, II App. at

406. Further, the district court ruled that joinder was not feasible because the absent parties possessed sovereign immunity. Finally, the absent tribes were indispensable because they would suffer substantial prejudice if the action proceeded without them; there was no way to lessen the prejudice; a judgment without the tribes would be inadequate; and the Citizen Potawatomi Nation was said to have an adequate alternative remedy in Congress. See Order at 8-10, II App. at 409-411. Accordingly, the district court granted the motions to dismiss.

## II

### A

#### STANDARD OF REVIEW

We review determinations made pursuant to Fed. R. Civ. P. 19(a) for an abuse of discretion, while the underlying legal conclusions supporting Rule 19 determinations are reviewed <u>de novo</u>. <u>Davis v. United States</u>, 192 F.3d 951, 957 (10th Cir. 1999). We review <u>de novo</u> the legal ruling on when a party can assert its sovereign immunity and the district court's determination of subject matter jurisdiction. <u>Fletcher v. United States</u>, 116 F. 3d, 1315, 1323-24 (10th Cir. 1997).

**B**

**RULE 19**

"The question of whether an absent party is necessary and/or indispensable is resolved by applying Rule 19 of the Federal Rules of Civil Procedure." Sac and Fox Nation of Missouri v. Norton, 240 F.3d 1250, 1258 (10th Cir. 2001) (quoting Davis, 192 F.3d at 957). Rule 19 provides a three-step process for determining whether an action should be dismissed for failure to join a purportedly indispensable party. United States v. Bowen, 172 F.3d 682, 688 (9th Cir. 1999). First, the court must determine whether the absent person is "necessary." A person is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a); Bowen, 172 F.3d at 688.

If the absent person is necessary, the court must then determine whether joinder is "feasible." See Fed. R. Civ. P. 19(a)-(b). In the instant case, the Citizen Potawatomi do not dispute the district court's ruling that joinder of the absent tribes was not feasible because the tribes possess sovereign immunity. See Fletcher v. United States, 116 F.3d 1315, 1324 (10th Cir. 1997) ("Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories. . . . As an aspect of this

- 6 -

sovereign immunity, suits against tribes are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress.") (citing <u>Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma</u>, 498 U.S. 505, 509 (1991)).

Finally, if joinder is not feasible, the court must decide whether the absent person is "indispensable," i.e., whether in "equity and good conscience" the action can continue in his absence. The factors the court considers include:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

# III

# NECESSARY PARTIES

# A

# THE FUNDING FORMULA

The Citizen Potawatomi challenge Defendants' determination that the 1988 formula is static. Because the Citizen Potawatomis' action may alter the future funding for the absent tribes, the tribes can claim interests relating to the subject of the action.

See <u>Manygoats v. Kleppe</u>, 558 F.2d 556, 558 (10th Cir. 1977) ("The financial and other benefits to the Tribe under the Exxon agreement give the tribe sufficient interest to satisfy the requirements of Subsection (a)(2)(i)."). In <u>Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier</u>, 17 F.3d 1292, 1294 (10th Cir. 1994), we noted that for purposes of Rule 12(b)(7) necessary party analysis the Rule does not protect "inchoate" interests. Here, however, the tribes have already agreed to the use of the formulas in question. As the district court noted, Order at 6, II App. at 407, here the five tribes entered in an agreement regarding a funding formula in 1988. We feel this transforms the funding decisions from a mere expectation, which is unprotected, into an interest which is protected.

The Citizen Potawatomi argue, however, that they do not challenge the use of the 1988 formula as a basis for funding, but rather how the Defendants implement the formula, and that under the Ninth Circuit's decision in <u>Makah Indian Tribe v. Verity</u>, 910 F.2d 555, 558 (9th Cir. 1990), absent tribes are not "necessary" in such circumstances. We are not persuaded. That case presented a challenge brought by the Makah to regulations of the Secretary of Commerce governing quotas on tribal ocean fishing for various tribes. The court held that the other tribes were not necessary to the action because "all of the tribes have an equal interest in an administrative process that is lawful." <u>Id.</u> at 559. The Citizen Potawatomi make the same argument in this action, contending that the "remaining tribes" do not possess a "legitimate interest in continuing

to receive funding allocations that are not fairly distributed." Brief For Appellant at 15-16.

We do not agree. <u>Makah</u> focused on the underlying merits of the litigation – all tribes have an interest in a "lawful" administrative process. As we have made clear, the underlying merits of the litigation are irrelevant under Fed. R. Civ. P. 19(a):

> Plaintiffs' narrow interpretation of the term "legally protected interest" inappropriately presupposes Plaintiffs' success on the merits. Under the interpretation advanced by Plaintiffs, the Tribe would have no legally protected interest in the monies used to fund Judgment Fund Programs that exclude the Estelusti Seminoles only if Plaintiffs prevail on the merits. Consequently, if this court adopted Plaintiffs' interpretation of the term "legally protected interest," the district court would be required to determine the merits of Plaintiffs' Judgment Fund Award claim before ruling on Defendants' motion to dismiss. Such an approach is untenable because it would render the Rule 19 analysis an adjudication on the merits. The term "legally protected interest" thus cannot mean what Plaintiffs would like it to mean.

<u>Davis</u>, 192 F.3d at 958.

We thus noted that "Rule 19, by its plain language, does not require the absent party to actually <u>possess</u> an interest; it only requires the movant to show that the absent party '<u>claims an interest</u> relating to the subject of the action.'" <u>Id.</u> (emphasis in original) (quoting Fed. R. Civ. P. 19(a)(2)). Consequently, Rule 19 excludes only "those <u>claimed</u> interests that are 'patently frivolous.'" <u>Id.</u> at 959 (citing <u>Shermoen v. United States</u>, 982 F.2d 1312, 1318 (9th Cir. 1992)) (emphasis in original). Applying <u>Davis</u> to the instant case, we are convinced that the Citizen Potawatomi have not demonstrated that the absent tribes' defense of the current funding methods would be "patently frivolous." Thus, even

- 9 -

if the Citizen Potawatomi would otherwise prevail on the merits, the absent tribes can nevertheless validly claim an interest in the subject of the action.

We are likewise unpersuaded by Citizen Potawatomis' reliance on Ramah Navajo Sch. Bd. v. Babbitt, 87 F.3d 1338, 1351 (D.C. Cir. 1996), for the proposition that the United States can adequately protect the absent tribes' interest and that therefore they are not necessary parties. Brief For Appellant at 16. The Court of Appeals for the District of Columbia Circuit did note in Ramah, 87 F.3d at 1351, that the United States may "adequately represent" a tribe's interests; however, it made it clear that this representation is permissible only so long as "no conflict exists between the United States and the nonparty beneficiaries." Id. (emphasis added). In the instant case, however, some tribes may gain, while some tribes may lose if the Citizen Potawatomi prevail. Thus, we agree with the district court here that the United States cannot adequately represent these varied and potentially conflicting interests. Order at 10-11, II App. at 411-12. See Cherokee Nation of Oklahoma v. Babbitt, 117 F.3d 1489, 1497 (D.C. Cir. 1997) (finding absent Tribe was indispensable and distinguishing Ramah as a case in which the government "had no conflicting obligations to the nonparty tribes"); see also Makah 910 F.2d at 560 ("[T]he absent tribes had no proper representative because potential intertribal conflicts meant the United States could not represent all of them.").

In sum, Defendants have sufficiently demonstrated that the absent tribes can claim an interest in the application of the funding formulas and that Defendants cannot

adequately represent their varied interests.  Accordingly, we are convinced that the district court did not abuse its discretion by ruling that the absent tribes were "necessary" for purposes of the Citizen Potawatomis' claim concerning the funding formula.

## B

### THE SERVICE POPULATION

The Citizen Potawatomi next claims that Defendants have improperly provided a shared service area for it and the Shawnee and therefore improperly awarded the Shawnee excess funds.  Brief for Appellant at 11.  Unquestionably the Shawnee can claim an interest in the funding that they receive for the shared service area.  Manygoats, 558 F.2d at 558 ("The financial and other benefits to the Tribe under the Exxon agreement give the tribe sufficient interest to satisfy the requirements of Subsection (a)(2)(i).").  The Citizen Potawatomi argues, however, that we have previously ruled that the Shawnee do not share a reservation with them and that it therefore follows that they do not share a service area with them either.

It is true that in Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 17 F.3d 1292, 1294 (10th Cir. 1994), we held that the United States had failed to adequately demonstrate that the Shawnee and the Citizen Potawatomi share a common former reservation.  Moreover, our Collier opinion did not decide whether the Shawnee and the Citizen Potawatomi share a common service area, which is the relevant question at issue

here.[1] Accordingly, we conclude the Shawnee do not present a "patently frivolous" claim that they share the service area with the Citizen Potawatomi Nation and thus pursuant to Davis, they can claim an interest in the Citizen Potawatomis' action.

Nor do we believe that Defendants can adequately represent the Shawnees' interests. Unlike the claim concerning the funding factors, where potential tribal conflicts were present, on this claim, the government officers would only have to represent one tribe – the Shawnee. Nevertheless, the relevant question under Rule 19(a) is whether the United States and the tribe share the same interest. In this case, Defendants have a duty to implement national Native American policy. The Shawnee, on the other hand, have an interest in receiving the funds at issue in this case. The two interests are not necessarily the same. Manygoats, 558 F.2d at 558 ("The Secretary must act in accord with the obligations imposed by NEPA. . . . The national interest is not necessarily coincidental with the interest of the Tribe in the benefits which the Exxon agreement provides. When there is a conflict between the interest of the United States and the interest of Indians, representation of the Indians is not adequate.").

In the circumstances of this case, we believe the district court did not abuse its

---

[1]We are not persuaded by the Citizen Potawatomi Nation's argument that service areas are generally defined by reservation boundaries. Brief For Appellant at 12. That concerns the merits of its claims, which are irrelevant to the issue at hand. The only question before us is whether our Collier decision renders the Shawnees' interest in this litigation "patently frivolous." Nothing in Collier compels a conclusion that service areas are defined by reservation boundaries.

discretion by holding that the United States could not adequately represent the Shawnees' interest. Accordingly, the district court did not abuse its discretion by deciding that the Shawnee were "necessary" for the purposes of the shared service claim.

## IV

## INDISPENSABLE PARTIES

The Citizen Potawatomi argue that even if the absent tribes are "necessary," they are not "indispensable." In determining whether absent parties are indispensable, the court must determine whether, in "equity and good conscience," the action can continue without the party. Fed. R. Civ. P. 19(b). In making this determination, the court must weigh the extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; whether a judgment rendered in the person's absence will be adequate; and whether the plaintiff would have an adequate remedy if the action is dismissed for nonjoinder. Id.

The Citizen Potawatomi argue primarily about the lack of an adequate remedy if the action is dismissed (and the prejudice that it would accordingly suffer). Clearly, sovereign immunity prevents the Citizen Potawatomi from pursuing these claims in an alternative legal forum. Fletcher, 116 F.3d at 1324-26. Moreover, if the Citizen

- 13 -

Potawatomi cannot challenge Defendants' administrative decisions, then no one can. As we have previously suggested:

> Dismissal of the action for nonjoinder of the Tribe would produce an anomalous result. No one, except the Tribe, could seek review of an environmental impact statement covering significant federal action relating to leases or agreements for development of natural resources on Indian lands.

Manygoats, 558 F.2d at 559; see also Makah, 910 F.2d at 559 n.6 (holding that the absent parties would not be "indispensable" because "Congress explicitly made FCMA regulations subject to judicial review. The Makah seek to use that tool to question whether the 1987 regulations were lawfully adopted in the first place.").

The relevant question before us is whether the district judge abused his discretion. We have noted the "strong policy favoring dismissal when a court cannot join a tribe because of sovereign immunity." Davis, 192 F.3d at 960. The district court relied on this factor as a reason for holding that the absent tribes were indispensable. Order at 10, II App. 411. Moreover, the district court ruled that the absent tribes would suffer substantial prejudice if the action proceeded without them and there was no way to lessen that prejudice. Id. at 9; II App. at 410. Here we do not believe the district court abused its discretion by relying on these factors as reasons for dismissing the action, even though the district court's decision meant there is no way to challenge the conduct in question.

**V**

**REMAINING CLAIMS**

The Citizen Potawatomi challenge Defendants' refusal to fund certain of their functions which the Citizen Potawatomi claim are "residual" and Defendants' interpretation of the "moratorium" clause. Brief For Appellant at 4-5. The district court did not address these claims in its order, and Defendants do not address them in their brief. The absent tribes do not appear to have an interest in these claims. Moreover, Defendants have not met their burden under Davis of "demonstrating the Tribe has an interest in [the] claim and that the Tribe's ability to protect that interest will be impaired or impeded if the suit proceeds in the Tribe's absence." Davis, 192 F.3d at 962.

However, we may affirm the district court on any basis the record supports, even one the district court did not reach. See Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1524 (10th Cir. 1997) ("[W]e are not constrained by the district court's conclusions, but may affirm the district court on any legal ground supported by the record."). Our examination of § 328 of Congress' 1999 appropriations bill convinces us that it contains a moratorium clause that precludes the future funding of residuals:

> Notwithstanding any other provision of law, none of the funds in this Act may be used to enter into any new or expanded self-determination contract or grant or self-governance compact pursuant to the Indian Self-Determination Act of 1975, as amended, for any activities not previously covered by such contracts, compacts or grants. Nothing in this section precludes the continuation of those specific activities for which self-determination and self-governance contracts, compacts and grants currently exist or the renewal of contracts, compacts and grants for those activities; implementation of section 325 of Public Law 105-83 (111 Stat. 1597); or compliance with 25 U.S.C. § 2005.

- 15 -

Omnibus Consolidated and Emergency Appropriations Act of 1999, Pub. L. No. 105-277, § 328.

Congress has specified that "the provision of funds under [the Indian Self-Determination and Education Assistance Act] is subject to the availability of appropriations." Because the 1999 moratorium clause precludes the Citizen Potawatomi from receiving additional funds, we are left without an effective remedy to afford to them and thus lack jurisdiction over the residual and moratorium claims. Accordingly, we affirm their dismissal.

The Citizen Potawatomi also argue that the district court abused its discretion by dismissing the action without allowing further discovery. However, they have not suggested the possibility of development of any evidence that would be relevant to a Rule 19 inquiry. Indeed, the district court assumed that the Citizen Potawatomis' facts alleged were true, but held that under those assumed facts, it had to dismiss the action. See Order at 4; II App. at 405. The district court did not abuse its discretion by deciding the motions without allowing further discovery.

Accordingly, we **affirm** the district court's dismissal of the action.