**WADDELL & REED FINANCIAL, INC., Waddell & Reed, Inc., and Waddell & Reed Investment Management Company, Plaintiffs,**

v.

**TORCHMARK CORPORATION, Ronald K. Richey, Harold T. McCormick, and Louis T. Hagopian, Defendants.**

No. CIV.A. 01–2372–KHV.

United States District Court, D. Kansas.

Dec. 21, 2001.

---

James D. Griffin, Angel D. Mitchell, Blackwell Sanders Peper Martin LLP, Kansas City, MO, Thomas H. Dahlk, Megan Sebastian Wright, Trenton P. Bausch, Blackwell Sanders Peper Martin LLP, Omaha, NE, for plaintiffs.

William R. Sampson, Scott C. Nehrbass, Matthew C. Miller, Shook, Hardy & Bacon L.L.P., Overland Park, KS, Hobart A. McWhorter, Jr., James W. Gewin, Michael R. Pennington, Bradley Arant Rose & White LLP, Birmingham, AL, Betsy Palmer Collins, William J. Baxley, Baxley, Dillard, Dauphin & McKnight, Birmingham, AL, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiffs filed suit against Torchmark Corporation ("Torchmark"), the former corporate parent of Waddell & Reed, Inc. ("W & R"), and former common directors of Torchmark and Waddell & Reed Financial, Inc. ("W & R Financial") under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Kansas common law. This matter is before the Court on Defendants' Motion For Abstention And Stay Or, In The Alternative, To Dismiss (Doc. # 12) filed August 22, 2001. For reasons stated below, defendants' motion is overruled.

### Factual Background

Before November 1998, W & R and United Investors Life Insurance Company ("UILIC") were wholly-owned subsidiaries of Torchmark. UILIC issued variable insurance products which W & R distributed and underwrote. Because UILIC and W & R were affiliated companies, and were both owned by Torchmark, the compensation to be paid W & R by UILIC was not competitive with what other issuers of variable insurance products paid for distribution and underwriting services. Before March 4, 1998, Ronald K. Richey was Chief Executive Officer of Torchmark and Chairman of the Board. Harold T. McCormick and Louis T. Hagopian also served as directors of Torchmark.

In November 1998, Torchmark spun off W & R as a separate and independent company to market insurance and annuity

products. W & R Financial is now the parent corporation of W & R. Waddell & Reed Investment Management Company ("W & R Investment") is a subsidiary of W & R. After the spin off, Torchmark and W & R Financial shared seven directors including Richey, McCormick and Hagopian.

After the spin off, W & R approached a number of other insurance companies about selling their products instead of those of UILIC. W & R reached an agreement to do so with Security Benefit Life, another variable annuity provider. W & R did not complete the deal, however, because on July 8, 1999 it reached an "agreement" with UILIC as to compensation and product features (the "Letter Agreement").[1] The agreement provided that in exchange for W & R's agreement to withdraw its consideration of possible deals with other insurance companies and to not replace UILIC's existing policies, UILIC would pay W & R 20 basis points on the existing, in-force variable annuity book of business with UILIC. The agreement also provided that both UILIC and W & R would commit the necessary resources to design, create, implement and introduce competitive products and product features. Before any additional agreement had been reached, W & R began withholding 20 basis points from UILIC.

On May 3, 2000, in the Circuit Court of Jefferson County, Alabama, UILIC sued W & R Financial, Waddell & Reed Financial Services, Inc., W & R, Waddell & Reed Insurance Agency, Inc., and Waddell & Reed Insurance Agency of Alabama, Inc. (collectively, the "Alabama Defendants"). See *United Invs. Life Ins. Co. v. Waddell & Reed Fin., Inc.*, No. CV–00–2720. UILIC asserted claims for breach of contract, conversion and tortious interference with the contractual relations between UILIC and its policyholders. UILIC alleged that the original underwriting agreement between UILIC and W & R was controlling and that W & R could not withhold funds based on the Letter Agreement. UILIC also alleged that W & R had wrongfully replaced and threatened to replace UILIC's in-force business with products offered by other insurance companies.

Two days later, on May 5, 2000, in the District Court of Johnson County, Kansas, W & R filed a declaratory judgment action against UILIC. W & R asked the court to declare that the Letter Agreement was binding and justified its withholding of the 20 basis points. UILIC removed the case to the District of Kansas. See *Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, No. 00–2209–CM. UILIC asked the Court to either (1) decline jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) or (2) in deference to the Alabama case, dismiss the action under the Colorado River doctrine. The Honorable Carlos Murguia refused to exercise jurisdiction under the Declaratory Judgment Act and dismissed the case. See *id.*, 2000 WL 1595751 (D.Kan. Oct.18, 2000).

On May 24, 2000, in the Alabama action, the Alabama Defendants filed counterclaims against UILIC and joined Torchmark and Richey as third-party defendants to the counterclaims. The Alabama Defendants asserted claims for fraudulent inducement, fraudulent suppression, breach of fiduciary duty, tortious interference with business relations, breach of contract, estoppel and unjust enrichment. The Alabama Defendants alleged that UILIC had breached the Letter Agreement and that UILIC had fraudulently induced the Alabama Defendants to enter

---

1. Waddell & Reed characterizes the agreement as binding while UILIC characterizes the agreement as tentative.

into and perform their obligations under the Letter Agreement. In its claim of fraudulent suppression, the Alabama Defendants alleged that UILIC, Torchmark and Richey through McCormick, Hagopian and others had failed to disclose that UILIC would not agree to pay additional compensation absent an agreement not to replace UILIC policies. See Waddell & Reed's Answer Affirmative Defense, And Amended Counterclaims in Alabama Case ("W & R's Amended Counterclaims") at 38, attached as exhibit C to defendants' Reply To Plaintiffs' Brief In Opposition To Defendants' Motion For Abstention And Stay Or, In The Alternative, To Dismiss (Doc. # 26) filed October 9, 2001. The Alabama Defendants later attempted to drop Torchmark and Richey as third-party defendants, but the Alabama court refused to do so unless the Alabama Defendants agreed to a dismissal with prejudice.

On July 26, 2001, W & R Financial, W & R and W & R Investment (collectively the "Kansas Plaintiffs") filed the instant action. The Kansas Plaintiffs assert claims for RICO violations, breach of fiduciary duty and interference with prospective business relations. In particular, the Kansas Plaintiffs allege that based on Richey's control over both Torchmark and W & R Financial and defendants' fraudulent representations related to the compensation agreements, the value of W & R Financial has declined, W & R was delayed from bringing a new variable insurance product to market and incurred substantial litigation costs in the Alabama case, and W & R Investment has been injured by its termination as the investment advisor for Torchmark general accounts.

### Analysis

■ Defendants argue that deferral to the Alabama action is appropriate under the Colorado River doctrine. See *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The Colorado River doctrine establishes certain factors for a district court to consider when deciding whether to stay or dismiss a federal suit that parallels a state court proceeding. See *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir.1999).

### I. Whether The Two Actions Are Parallel

■ Before applying the Colorado River factors, the Court must first determine "whether the state and federal proceedings are parallel." *Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 402 (10th Cir.1995); *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir.1994) ("*Fox I*"). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Allen*, 68 F.3d at 402.

The parties in the Alabama and Kansas cases are substantially the same. Although UILIC is a party in the Alabama case and not in this one, UILIC's parent corporation—Torchmark—is a party in this case. W & R concedes that Torchmark "has exercised and continues to exercise complete dominion and control over [UILIC] such that [UILIC], although formed as a separate corporation, has operated and continues to operate as a mere arm or extension of [Torchmark]." Waddell & Reed's Amended Counterclaims at 22. Therefore, the absence of UILIC in this action is immaterial.

McCormick and Hagopian are parties in this case, but not in the Alabama case. In its counterclaims in the Alabama case, however, Waddell & Reed identifies several non-party wrongdoers including McCormick and Hagopian. McCormick and Hagopian also have been deposed in the Alabama case. In this action, plaintiffs' theory of recovery against McCormick and Hagopian is based in part on the fact that they were members of the

board of directors of both Torchmark and W & R Financial—a theory similar to that asserted against Richey in both suits. See *id.* at 31–32, 38. Plaintiffs cannot avoid application of the Colorado River doctrine and destroy the parallel nature of the cases by simply adding related defendants to the federal suit. See *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1288 (7th Cir.1988).

W & R Investment is a plaintiff in this case, but is not a party in the Alabama case. W & R Investment is a wholly-owned subsidiary of W & R. W & R and four other Waddell & Reed entities are parties in the Alabama case. Moreover, W & R Investment is identified in the Alabama pleadings and its claims in this case have a factual basis which is similar to that in the Alabama case. W & R Investment has not shown how its interests are different from those of the five related Waddell & Reed entities in the Alabama case. See *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.,* 962 F.2d 698, 700–01 (7th Cir.1992) (suits involved substantially the same parties where party in federal suit owned 25% of corporate party in state suit); *Nakash v. Marciano,* 882 F.2d 1411, 1416–17 (9th Cir.1989) (absence in state action of all corporate entities owned and operated by the parties is not dispositive); *Lumen Constr., Inc. v. Brant Constr. Co., Inc.,* 780 F.2d 691, 695 (7th Cir.1985) (where interests of parties in both suits are congruent, abstention may be appropriate notwithstanding that the parties are not identical) (citation omitted). Just as plaintiffs cannot avoid application of the Colorado River doctrine by adding related claims to the federal suit, they also cannot avoid the Colorado River doctrine by adding a wholly-owned corporate entity as a plaintiff in a case which is based on essentially the same facts as the earlier state court action.

The two cases also involve substantially the same issues. Both cases involve the various compensation agreements between UILIC and W & R, the enforceability of the Letter Agreement, the representations by UILIC and W & R during the negotiation of the various compensation agreements, and Richey's involvement and control over W & R Financial. In the Alabama case, UILIC asserts claims for breach of contract, conversion, and tortious interference with contractual relations and the Alabama Defendants assert claims for fraudulent inducement, fraudulent suppression, breach of fiduciary duty, tortious interference with business relations, breach of contract, estoppel and unjust enrichment. The Kansas case includes a RICO claim against Torchmark, but that claim arises from many of the same facts as the claims asserted in the Alabama case. The scope of the Kansas claims are broader than the Alabama ones, but both cases nevertheless involve litigation of substantially the same underlying dispute—the negotiation and execution of a compensation agreement between UILIC and Waddell & Reed. See Waddell & Reed's Amended Counterclaims at 22 (asserting that UILIC's affirmative claims and Waddell & Reed's counterclaims against Richey involve "numerous common questions of law and fact"). Given the substantial overlap of parties and issues in the Alabama and Kansas cases, the Court finds that they are parallel actions for purposes of the Colorado River doctrine.

## II. Colorado River Factors

Except for certain limited exceptions, a federal court should exercise the jurisdiction it is granted. See Rienhardt, 164 F.3d at 1303. The Colorado River doctrine allows a federal court, however, to defer from exercising its jurisdiction in exceptional circumstances. See *Shadwick*

*v. Butler Nat'l Corp.*, 950 F.Supp. 302, 304 (D.Kan.1996). To determine whether to dismiss a federal court action based on a parallel state court case, the Court considers the following factors:

(1) whether either court has assumed jurisdiction over property;

(2) whether the federal forum is inconvenient;

(3) the avoidance of piecemeal litigation;

(4) the order in which the courts obtained jurisdiction and the progress of the two cases;

(5) which forum's substantive law governs the merits of the litigation; and

(6) the adequacy of the state forum to protect the rights of the parties.

See *Colorado River*, 424 U.S. at 819, 96 S.Ct. 1236; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ The test is to be applied in a pragmatic, flexible manner. See *Shadwick*, 950 F.Supp. at 304. In applying the test, no one factor is determinative and the weight to be given any one factor may vary from case to case. See *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. Any doubt in the application of the factors "should be resolved in favor of exercising federal jurisdiction." *Fox I*, 16 F.3d at 1082.

## A. Whether Either Court Has Assumed Jurisdiction Over Property

This factor is neutral. In May, June and July, 2001, the Alabama Defendants paid the disputed basis points compensation to the registry of the Alabama court. In August 2001, the Alabama court ordered the clerk to pay UILIC the funds on deposit ($1,029,950.00). It is not clear whether Waddell & Reed has continued to pay the disputed compensation to the Alabama court registry. In any event, the Alabama and Kansas actions are based on *in personam* jurisdiction, not *in rem* juris-

diction, and thus neither court has assumed jurisdiction within the meaning of the Colorado River doctrine. See *Colorado River*, 424 U.S. at 819, 96 S.Ct. 1236 ("the concern . . . is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property"); *Bergeron v. Estate of Loeb*, 777 F.2d 792, 799 (1st Cir.1985) (this factor "has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court"), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1517, 89 L.Ed.2d 915 (1986).

## B. Whether The Federal Forum Is Inconvenient

This factor also is neutral. The parties and witnesses are widely dispersed throughout the country. Defendants have not shown that Kansas is less convenient than Alabama for the parties and witnesses. See *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1193 (5th Cir.1988) (question not whether federal forum is inconvenient, but whether federal forum is less convenient than state forum).

## C. The Avoidance Of Piecemeal Litigation

This factor weighs in favor of retaining the case. Except for a RICO claim which Waddell & Reed asserts in this case and the addition of McCormick and Hagopian as defendants, the claims to be resolved in the two pending lawsuits are substantially the same. Moreover, the RICO claim in this case is based on many of the same facts as the claims in the Alabama action. Accordingly, the claims against Torchmark and Richey will likely be barred after final judgment is entered in the Alabama case. See *Fox v. Maulding*, 112 F.3d 453, 459 (10th Cir.1997) ("*Fox II*") (failure to assert RICO claim in prior state case barred

assertion of claim in federal court under res judicata principles). The two actions do not entirely overlap, however, and the risk of inconsistent results and pretrial rulings is minimal given that the Alabama case is nearly ready for trial. As explained below, a judgment in the Alabama case will likely be res judicata as to Torchmark and Richey. See infra part II. F. 1. A final judgment in the Alabama case, however, would not bar Waddell & Reed's claims against McCormick and Hagopian, who are not parties to the Alabama case. See infra part II. F. 3. Because this action likely will continue after judgment in the Alabama case, a stay under Colorado River would not help avoid piecemeal litigation. See *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927 (Colorado River stay "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case").

## D. The Order In Which The Courts Obtained Jurisdiction

This factor weighs in favor of staying the case. The Alabama action was filed nearly 15 months before the instant action. Moreover, discovery in the Alabama case is nearly complete and the case is set for trial in February 2002. See *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. 927 ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"). In this action, the Court recently set the case for trial in January 2003. Given that the Alabama case was filed first and is nearly ready for trial, this factor strongly favors a stay of the instant action. See *Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236.

## E. Which Forum's Substantive Law Governs The Merits Of The Litigation

Federal law will govern the RICO claim asserted in this action. The Alabama De-

fendants have not asserted a RICO claim, but state courts have concurrent jurisdiction over such claims. See *Tafflin v. Levitt,* 493 U.S. 455, 467, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). Because federal law controls the RICO claim, however, this factor slightly favors retaining the federal case. See *Nakash,* 882 F.2d at 1416 (if state and federal courts have concurrent jurisdiction over claim, this factor becomes less significant).

## F. The Adequacy Of The State Forum To Protect The Parties' Rights

■ The Supreme Court has noted:

When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the *complete and prompt resolution* of the issues between the parties. If there is *any substantial doubt* as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

*Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927 (emphasis added). In other words, the Court may enter a stay under the Colorado River doctrine only if it has "full confidence" that the parallel state litigation will end the parties' dispute. *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 277, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (citing *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927).

To determine whether the Alabama court can provide a complete resolution of the parties' dispute, the Court must determine whether any claim in this case would remain after a final judgment in the Alabama case.

### 1. *W & R Financial And W & R, Inc. v. Torchmark And Richey*

■ As to the claims of W & R Financial and W & R against Torchmark and

Richey, a final judgment in the Alabama case will likely bar any claims in this action between the same parties under res judicata principles. Under Alabama law, the elements of res judicata are "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Equity Res. Mgmt., Inc. v. Vinson,* 723 So.2d 634, 636 (Ala.1998). "If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation." *Id.*

█ The parties do not dispute that the second, third and fourth elements are satisfied as to the claims of W & R Financial and W & R against Torchmark and Richey. Waddell & Reed argues, however, that in the Alabama case, no decision "on the merits" will rendered with regard to its claims against Torchmark and Richey. On September 5, 2001, in response to UILIC's third amended complaint, the Alabama Defendants dropped their counterclaims against Torchmark and Richey. At a subsequent hearing in the Alabama case, Judge Smallwood announced that he intended to let the Alabama Defendants drop Torchmark and Richey if the Alabama Defendants agreed that the dismissal was "with prejudice on claims that were asserted or could have been asserted." Transcript of October 6, 2001 Hearing at 107, attached as exhibit A to Defendants' Reply (Doc. # 26). Judge Smallwood has not issued a written decision on the issue and Waddell & Reed has not stated whether it will prosecute its counterclaims in the event Judge Smallwood issues a written ruling consistent with his previous comments. The Kansas Plaintiffs contend that even if the Alabama counterclaims are dismissed with prejudice over their objection, no decision will have been made "on the merits." See Sur–Reply To Defendants' Reply To Plaintiffs' Brief In Opposition To

Motion For Abstention Or Stay (Doc. # 38) filed November 16, 2001 at 5 n. 1 (citing *Costello v. United States,* 365 U.S. 265, 269, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) and *Baris v. Sulpicio Lines Inc.,* 74 F.3d 567, 571 (5th Cir.), *aff'd en banc,* 101 F.3d 367 (1996), *cert. denied,* 520 U.S. 1168, 117 S.Ct. 1432, 137 L.Ed.2d 540 (1997)). The Court disagrees. A voluntary dismissal with prejudice ordinarily is considered a judgment "on the merits" for purposes of res judicata. See *Baris,* 74 F.3d at 570; *Clark v. Haas Group, Inc.,* 953 F.2d 1235, 1238 (10th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). While the Alabama Defendants may prefer a voluntary dismissal without prejudice, Judge Smallwood is apparently disinclined to grant such a request. Based on Judge Smallwood's oral comments, the Alabama Defendants must either (1) dismiss their counterclaims with prejudice or (2) continue to trial in Alabama on their counterclaims. In either event, any judgment in Alabama is likely to be res judicata as to the claims of W & R Financial and W & R against Torchmark and Richey.

### 2. *W & R Investment v. Torchmark And Richey*

█ W & R Investment is not a party to the Alabama case but under Alabama law, that fact is not dispositive. Judgments in a prior case may bind nonparties to the prior case if (1) the nonparty was in privity with a party to the prior action or (2) "where the nonparties' interests were represented adequately by a party in the original suit." *West v. City of Mobile,* 689 So.2d 14, 16 (Ala.1997) (quoting *Century 21 Preferred Props., Inc. v. Alabama Real Estate Comm'n,* 401 So.2d 764, 770 (Ala.1981)); see *Parmater v. Amcord, Inc.,* 699 So.2d 1238, 1241 (Ala.1997). The Court first analyzes whether Waddell & Reed Investment will be bound by a judgment in the Alabama case under the

latter theory, which is also referred to as "virtual representation." To establish virtual representation, defendants must show that at the time of the Alabama suit, W & R Financial and W & R were so closely aligned with the interests of W & R Investment as to be its virtual representative. See *West,* 689 So.2d at 16. W & R Investment is a wholly-owned subsidiary of W & R. W & R and four other Waddell & Reed entities are parties in the Alabama case. W & R Investment is identified in the Alabama pleadings. Its claims in this case are factually similar to those in the Alabama case. W & R Investment has not shown how its interests are different than those of the five related Waddell & Reed entities in the Alabama case. For these reasons, a judgment in the Alabama case will likely bar the claims of W & R Investment against Torchmark and Richey in this action.[2]

### 3. *W & R Financial and W & R v. McCormick And Hagopian*

Defendants maintain that the claims of W & R Financial and W & R against McCormick and Hagopian are barred because the Alabama Defendants did not join them as third party defendants. In their briefing, defendants cite a single authority for the proposition that non-party defendants may be bound by a judgment. See Defendants' Reply (Doc. # 26) at 24 n. 9 (citing 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 1413, at 98 (1990)). Defendants do not attempt to explain the Wright & Miller citation, which the Court finds to be irrelevant in this case. The Wright & Miller treatise pro-

vides in part that "[i]f a party chooses to interpose an excepted counterclaim [under Rule 13(a), Fed. R. Civ. P.], the court will treat it as compulsory in most respects." See *id.* Because defendants have not shown or even argued that the claims in this action are "excepted counterclaims" under Rule 13(a), Ala. R. Civ. P., the cited reference is not helpful. See Ala. R. Civ. P. 13(a) ("the pleader need not state the claim if: (1) at the time the action was commenced the claim was the subject of another pending action; or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13; or (3) the opposing party's claim is for damage covered by a liability insurance policy under which the insurer has the right or the obligation to conduct the defense.").[3]

Defendants essentially assert that Richey is in privity with McCormick and Hagopian because their interests are similar. In other words, defendants maintain that Richey was the virtual representative of McCormick and Hagopian in the Alabama case. To show privity by virtual representation, defendants must show that at the time of the Alabama suit, Richey was so closely aligned with the interests of McCormick and Hagopian as to be their virtual representative. See *West,* 689 So.2d at 16. The strict requirements for virtual representation ensure that the relationship "between the party and the nonparty is not so attenuated as to violate due process." *Whisman v. Ala. Power Co.,*

---

**2.** Plaintiffs argue that because W & R Investment is a separate corporation under corporate law principles, it cannot be found to be in "privity" with W & R and W & R Financial for res judicata purposes. The Court need not address this argument because W & R Investment may be bound for res judicata

purposes if its interests were adequately represented by W & R and W & R Financial. See *Parmater,* 699 So.2d at 1241.

**3.** Rule 13(a) of the Federal Rules of Civil Procedure contains the first two exceptions of the Alabama Rule but not the third one.

512 So.2d 78, 82 (Ala.1987). Defendants argue that the Court should find privity (or virtual representation) based on Waddell & Reed's allegation in this case that McCormick and Hagopian "have always acted in concert with or under the direction of Richey" and that the common directors of W & R Financial and Torchmark constituted an association-in-fact enterprise organized for the purpose of controlling the board of W & R Financial. See Complaint (Doc. # 1) filed July 26, 2001, ¶¶ 6, 58. Initially, the Court notes that defendants rely solely on plaintiffs' allegation to show that defendants have identical or closely aligned interests. Defendants have not provided any affidavits or other evidence to support their apparent assertion that plaintiffs' allegation of concerted conduct is true. Based on defendants' failure to come forward with any factual support on this issue and absent an answer filed by defendants, the Court can only speculate that defendants deny plaintiffs' allegation that McCormick and Hagopian acted in concert with and under the direction of Richey.

 In addition, acting in concert with another for one purpose does not necessarily establish identity of interests during a subsequent lawsuit. Plaintiffs' allegation of a RICO enterprise does not show that *during the litigation of the Alabama case,* Richey's interests were closely aligned with those of McCormick and Hagopian. To support a finding of virtual representation, the Court ordinarily must find that the parties in the earlier action were in some sense proper agents for the latter parties so as to support preclusion of the latter claim. See *Tice v. Am. Airlines, Inc.,* 162 F.3d 966, 971 (7th Cir.1998), *cert. denied,* 527 U.S. 1036, 119 S.Ct. 2395, 144 L.Ed.2d 795 (1999). Such an agency rela-

tionship may arise, for example, where the party in the first suit had some obligation to safeguard the interests of the party to the second suit. See *Moldovan v. Great Atl. & Pac. Tea Co.,* 790 F.2d 894, 899 (3d Cir.1986), *cert. denied,* 485 U.S. 904, 108 S.Ct. 1074, 99 L.Ed.2d 233 (1988); see also *Tyus v. Schoemehl,* 93 F.3d 449, 455 (8th Cir.1996) ("A court will apply virtual representation only when it finds the existence of some special relationship between the parties justifying preclusion."), *cert. denied,* 520 U.S. 1166, 117 S.Ct. 1427, 137 L.Ed.2d 536 (1997); *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 43 F.3d 1054, 1070 (6th Cir.) ("Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.") (quoting *Benson & Ford, Inc. v. Wanda Petro. Co.,* 833 F.2d 1172, 1175 (5th Cir.1987)), *cert. denied,* 516 U.S. 912, 116 S.Ct. 296, 133 L.Ed.2d 203 (1995); *Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 762 (1st Cir.1994) ("the parties' independence-the inescapable fact that the [prior] plaintiffs were not legally responsible for, or in any other way accountable to, the [nonparty] plaintiffs-weighs heavily against a finding of virtual representation"); *Amalgamated Sugar Co. v. NL Indus., Inc.,* 825 F.2d 634, 640 (2d Cir.) (interests of nonparty must be adequately represented by another vested with authority of representation), *cert. denied,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987); *Klugh v. United States,* 818 F.2d 294, 300 (4th Cir.1987) ("The doctrine of virtual representation does not authorize application of a bar to relitigation of a claim by a nonparty to the original judgment where the interests of the parties to the different actions are separate or where the parties to the first suit are not ac-

countable to the nonparties who file a subsequent suit."). Defendants have not established such a relationship between Richey, McCormick and Hagopian.

Despite the fact that the Alabama Defendants chose not to join McCormick and Hagopian, their absence in the Alabama case leaves the Court with substantial doubt that the Alabama case will be an adequate vehicle for the complete and prompt resolution of the parties' dispute.[4] The facts may ultimately disclose that Richey was the virtual representative of McCormick and Hagopian, or otherwise in privity with them. The Court's ruling here does not preclude defendants from raising such an argument after a final judgment has been entered in the Alabama action.[5] At this time, however, the Court has substantial doubt that a judgment in the Alabama case will fully resolve the dispute between the Kansas Plaintiffs, McCormick and Hagopian. This is a "murky corner of the law" and district courts should "tread gingerly in applying res judicata to nonparties." *Gonzalez*, 27 F.3d at 757 (1st Cir.1994); see *Klugh*, 818 F.2d at 300 ("Because the doctrine of virtual representation applies principles of res judicata to nonparties to a judgment, the doctrine must cautiously be applied in order to avoid infringing on principles of due process"). Because the Alabama court may not be able to fully resolve the parties' dispute, this factor strongly favors,

and indeed mandates, that this Court exercise its obligation to resolve the instant action. See *Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. 927.[6] Three of the above factors favor retaining the case, one factor favors staying the case and two factors are neutral. Most importantly, the Court has substantial doubt that the Alabama court can provide full and complete relief for the parties in this action. After carefully considering each factor, the Court cannot find any exceptional circumstances to depart from "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236. Accordingly, defendants' motion to stay or dismiss is overruled.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Abstention And Stay Or, In The Alternative, To Dismiss (Doc. # 12) filed August 22, 2001 be and hereby is **OVERRULED.**

---

**4.** Because the Alabama judgment likely will not preclude W & R Financial and W & R from asserting claims against McCormick and Hagopian, W & R Investment similarly would not be barred from asserting claims against these defendants.

**5.** Nor does the Court's ruling above preclude Waddell & Reed from arguing that the final judgment in the Alabama action does not bar its claims against Torchmark and Richey.

**6.** In *Moses H. Cone*, the Supreme Court also noted that the "vexatious or reactive nature of either the federal or the state litigation" may be relevant. See *id.*, 460 U.S. at 17 n. 20, 103 S.Ct. 927. This factor slightly favors staying this action because the Kansas Plaintiffs filed suit against Torchmark and Richey over one year after the Alabama Defendants had filed similar claims. Nevertheless, for reasons set forth above, the balance of factors compels the Court to exercise its obligation to resolve this case.