**BLUE RHINO CORPORATION,**
Plaintiff,

v.

**STOCKGROWERS STATE BANK OF ASHLAND, KANSAS, Defendant.**

No. CIV.A.03–2123–CM.

United States District Court,
D. Kansas.

Jan. 7, 2004.

George L. Little, Jr., Kilpatrick, Stockton, LLP, Winston–Salem, NC, James M. Warden, Tamara L. Niles, Donald F. Martin, Warden Triplett Grier, Overland Park, KS, for Plaintiff.

Eric D. Bruce, Elizabeth A. Carson, Bruce, Bruce & Lehman, Petra Johnson, Wichita, KS, for Defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter comes before the court on defendant Stockgrowers State Bank of Ashland, Kansas' ("Stockgrowers") Motion to Dismiss plaintiff Blue Rhino Corporation's ("Blue Rhino") complaint (Doc. 2). In its Motion, Stockgrowers requests the court to dismiss Blue Rhino's complaint or, in the alternative, to abstain from further review of the claims pending resolution of the state court proceedings. For the reasons set forth below, the court denies Stockgrowers' Motion to Dismiss and grants Stockgrowers' request for abstention.

## I. Factual Background

Blue Rhino filed this action against Stockgrowers on March 5, 2003. Blue Rhino claims that this court has jurisdiction over the matter because of the diverse citizenship of the parties and the amount in controversy exceeds $75,000. Blue Rhino alleges claims against Stockgrowers for replevin, conversion, and interference with a prospective business advantage.

Blue Rhino provides nationwide propane gas tank exchange services through distributors. Blue Rhino contracts with its distributors to deliver ready-to-use, propane-filled cylinders and to provide service to Blue Rhino's customers in exchange for a commission. Blue Rhino leases to its distributors gas cylinders, valving and sleeving equipment, inventory displays and inventory cases. BBQ Express, L.L.C. of Garden City, Kansas ("BBQ Express") was an authorized distributor for Blue Rhino from December 1999 until August 5, 2002. As a distributor, BBQ Express leased from Blue Rhino gas cylinders, valving and sleeving equipment, inventory displays and inventory cases. The lease between Blue Rhino and BBQ Express states that the leased items will be returned to Blue Rhino upon expiration of the lease. BBQ Express' lease with Blue Rhino terminated on August 5, 2002. At the time of the termination, Blue Rhino made plans to recover its property that had been leased to BBQ Express.

On August 14, 2002, Blue Rhino sent representatives and a truck driver to BBQ Express' location to load and remove Blue Rhino's equipment. Blue Rhino representatives loaded part of the equipment onto a truck.

As the Blue Rhino representatives were loading the rest of its equipment onto a second truck, a representative from Stockgrowers arrived at the BBQ Express location and told the Blue Rhino representatives that they could not remove the property because the bank (Stockgrowers) claimed an interest in the property. Stockgrowers contacted a Finney County Sheriff's deputy, who arrived and ordered Blue Rhino representatives to stop loading the equipment. The deputy then ordered the Blue Rhino representatives to unload the equipment already on the second truck and place it in a warehouse on BBQ Express' premises.

On August 15, 2002, Blue Rhino representatives again tried to retrieve the property from BBQ Express' premises. A Stockgrowers representative again told Blue Rhino representatives that Blue Rhino was not to remove the equipment. The same day, BBQ Express was forced into involuntary bankruptcy proceedings in the U.S. Bankrupcty Court for the District of Kansas (*In re BBQ Express LLC*, BB02–14014–REN). Blue Rhino claims Stockgrowers, as a creditor of BBQ Express, was motivated to seize the goods on BBQ Express' property to supplement the bankruptcy estate or otherwise satisfy debts BBQ Express owed to Stockgrowers. Blue Rhino alleges that Stockgrowers has claimed ownership of Blue Rhino's property based on a document signed by the owner of BBQ Express and that Stockgrowers has refused to return the property to Blue Rhino. Blue Rhino's claims arise out of Stockgrowers' alleged possession of the property belonging to Blue Rhino—specifically 9,272 propane gas cylinders, one sleeving machine, two hydraulic valve removal tools and a "Rhino Hub" computer system, for a total value of $257,971.

On March 27, 2003, Stockgrowers filed its Motion to Dismiss Blue Rhino's complaint for lack of jurisdiction, asserting that Blue Rhino's claims arise directly out of an action Stockgrowers filed in the District Court of Finney County, Kansas, on February 13, 2003, against Blue Rhino and six other defendants (*Stockgrowers State Bank of Ashland, Kansas v. Blue Rhino Corporation, Blue Rhino Express, Inc., Robert Scott Selzer,* *Lynda Selzer, BBQ Express of Minnesota LLC, BBQ Express of Colorado LLC, and USA Leasing LLC,* Case No. 03C51). All of the defendants in the state court case are residents of Kansas except Blue Rhino. Stockgrowers claims that Blue Rhino filed a separate federal court action because Blue Rhino was unable to remove the state court action to federal court because of the non-diverse citizenship of the parties. Stockgrowers asserts that if it is required to litigate Blue Rhino's claims in federal court, it will be forced to add the defendants from the state court action to the federal court action, thereby destroying the diversity of the parties.

Stockgrowers further claims that the property Blue Rhino claims is in Stockgrowers' possession is either in the possession of BBQ Express (which is now a bankrupt corporation) or is in the possession of Blue Rhino or Propane Platinum Holding LLC ("Platinum"), a third party that provided accounting services to BBQ Express. Stockgrowers also claims that Blue Rhino and/or Platinum removed collateral from the State of Kansas, which is part of the issues raised in Stockgrowers' state court action. Stockgrowers claims that if this court does not dismiss Blue Rhino's complaint, Stockgrowers will have mandatory counterclaims against Blue Rhino that duplicate the claims Stockgrowers has already brought in state court. Stockgrowers therefore requests that this court dismiss Blue Rhino's complaint and allow the parties to proceed with the state court litigation

## II. Defendant Stockgrowers' Motion to Dismiss

Stockgrowers requests the court to dismiss Blue Rhino's complaint because there is no true diversity among the parties and thus no valid jurisdiction by this court. Further, Stockgrowers asks the court to dismiss Blue Rhino's complaint because of a similar pending suit in Kansas state court. The court will examine each of Stockgrowers' arguments in turn.

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *Castaneda v. I.N.S.,* 23 F.3d 1576, 1580 (10th

Cir.1994). A court lacking jurisdiction must dismiss the case at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F.Supp. 279, 280 (D.Kan.1995) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)); Fed.R.Civ.P. 12(h)(3). As the party seeking to invoke federal jurisdiction, plaintiff bears the burden of establishing that such jurisdiction is proper. *Basso*, 495 F.2d at 909. When federal jurisdiction is challenged, plaintiff bears the burden of showing why the case should not be dismissed. *Jensen v. Johnson County Youth Baseball League*, 838 F.Supp. 1437, 1439–40 (D.Kan. 1993).

## A. Diversity

### 1. 28 U.S.C. § 1332

Because Blue Rhino does not assert claims arising under federal law, it invokes the court's jurisdiction pursuant to 28 U.S.C. § 1332, asserting that there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

█ In applying § 1332, the court recognizes that "diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). As the party asserting jurisdiction, Blue Rhino has the burden of establishing subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

In its complaint, Blue Rhino alleges that it is a Delaware corporation with its principal place of business in Winston–Salem, North Carolina, and that Stockgrowers is a Kansas corporation with its principal offices in Ashland, Kansas. Accepting as true Blue Rhino's uncontroverted statements regarding the citizenship of the parties, the court finds that Blue Rhino has met its burden to show that there is complete diversity, because Stockgrowers is not a citizen of the same state as Blue Rhino. Therefore, the court's subject matter jurisdiction is proper under § 1332.

### 2. Federal Rule Civil Procedure 19

Stockgrowers claims that a third party, Platinum, is a necessary party to the action. Stockgrowers alleges that Platinum maintains its corporate offices in Hamptonville, North Carolina. Stockgrowers claims that Platinum provided accounting services to BBQ Express from January 1, 2002, to December 31, 2002, and therefore has an intimate knowledge of the account, inventory, equipment, and documents of the state court defendants, including Blue Rhino. Although Platinum is not a party to this case, and Stockgrowers has not moved to add Platinum as a party to the case, Stockgrowers claims that Platinum is a necessary party and that the addition of Platinum as a defendant would destroy this court's jurisdiction over the parties because Platinum and Blue Rhino are both citizens of North Carolina.

█ It has long been the rule that, to satisfy the diversity of citizenship requirement of 28 U.S.C. § 1332(a)(1), **the plaintiffs and defendants must be completely diverse: No plaintiff can be a citizen of the same state as any defendant.** *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). **Moreover, "[d]iversity jurisdiction, once established, is not defeated by the addition of a non-diverse party to the action."** *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) **(per curiam). However, diversity jurisdiction will be destroyed if it is determined that a later-joined, non-diverse party was indispensable to the action at the time it commenced.** *Harris v. Ill.— Cal. Express, Inc.*, 687 F.2d 1361, 1367 (10th Cir.1982) **(holding that diversity jurisdiction is not lost by the intervention of a party who is not indispensable to the action). In this case, there is no question that Platinum would be a non-diverse party if it joined the case. Thus, the crux of this jurisdictional issue is whether Platinum was either necessary or indispensable at the time the original complaint was filed.**

Whether a party is necessary or indispensable is determined by considering the factors

set forth in Fed.R.Civ.P. 19. *Sac and Fox Nation of Mo. v. Norton,* 240 F.3d 1250, 1258 (10th Cir.2001); *see also Davis v. United States,* 192 F.3d 951, 957 (10th Cir.1999). Rule 19 provides a mechanism for joining, where feasible, parties necessary for the just adjudication of a dispute and, where it is not feasible to join such parties, for dismissing the case. *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.,* 320 F.3d 1081, 1097 (10th Cir.2003). The analysis to determine whether an action should be dismissed for failure to join an allegedly indispensable party has three parts. *Citizen Potawatomi Nation v. Norton,* 248 F.3d 993, 997 (10th Cir.2001).

First, the court must determine whether an absent party is "necessary." Under Rule 19(a), a party is necessary if: "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a); *see also Citizen Potawatomi Nation,* 248 F.3d at 997.

Second, if the absent party is necessary, then the court must determine whether joinder of the party is feasible. Fed.R.Civ.P. 19(a)-(b). Third, if the court finds joinder is not feasible, the court must decide whether the absent person is indispensable—whether the court can continue in "equity and good conscience" in the absence of the party. Fed.R.Civ.P. 19(b); *Citizen Potawatomi Nation,* 248 F.3d at 997. To make this determination, the court considers "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed.R.Civ.P. 19(b).

■ Stockgrowers alleges that Platinum is a necessary party under Rule 19. Platinum provided accounting services to BBQ Express from January 1, 2002, to December 31, 2002, and, according to Stockgrowers, therefore has an intimate knowledge of the account, inventory, equipment, and documents of Blue Rhino. Stockgrowers claims that it "appears" that Platinum was directly involved in and may have been liable for the conversion of accounts receivable and equipment that was pledged to Stockgrowers by BBQ Express. Stockgrowers further claims that Blue Rhino is also responsible for conversion of the equipment that was pledged to Stockgrowers. Stockgrowers claims this is the same equipment that Blue Rhino claims is at issue in its federal action. Stockgrowers argues that, because of Platinum's alleged role in the conversion of the equipment at issue in both the state and federal cases, the parties in the federal court proceeding cannot be accorded complete relief in Platinum's absence.

The court does not believe Stockgrowers has demonstrated that, without Platinum, complete relief cannot be accorded among the parties already in this case. Stockgrowers has not moved to add Platinum as a party to the case. Moreover, while Stockgrowers alleges wrongdoing by Platinum, Stockgrowers has not demonstrated that Platinum has an interest in the claims at issue in this case. Notably, Platinum has not moved to intervene in the case. Blue Rhino's complaint alleges wrong-doing by Stockgrowers in converting Blue Rhino's property, which Blue Rhino claims had no effect on Platinum and in which Blue Rhino claims Platinum was not involved. Blue Rhino has requested very specific relief from Stockgrowers.

Based on the facts set forth by the parties at this stage in the litigation, the court concludes that Platinum may have information relevant to the litigation in the case, not that it is a necessary party. Moreover, if Platinum truly has information relevant to this lawsuit, the parties could obtain such information through discovery procedures without having to join Platinum as a party. Because

Platinum's absence from the case would not prevent this court from according complete relief among those already parties to the case, Platinum is not a necessary party within the terms of Rule 19(a)(1). Moreover, as noted above, Stockgrowers has not demonstrated that Platinum is a party claiming an interest relating to the subject of the action under Rule 19(a)(2).

Therefore, because the court concludes that Platinum is not a necessary party under Rule 19(a), Platinum cannot be an indispensable party under Rule 19(b). Thus, the court need not consider the remaining factors under Rule 19. Stockgrowers' motion to dismiss for lack of jurisdiction is therefore denied.

## B. *Colorado River* Doctrine

Next, Stockgrowers requests the court either dismiss Blue Rhino's complaint or abstain from hearing the case on the grounds that Blue Rhino's claims arise from the same set of facts that serve as the basis of litigation currently pending in Kansas state court in Finney County ("the state court action"). Stockgrowers claims that Blue Rhino should have filed a counterclaim against Stockgrowers in the state court action rather than filing a completely separate lawsuit in federal court. The court concludes that Stockgrowers has satisfied the necessary requirements for abstention by this federal court.

In *Colorado River Water Conservation District v. United States,* the Supreme Court recognized that judicial economy may warrant deferral of a federal suit when pending state litigation will resolve the issues presented in the federal case.[1]  424 U.S. 800, 816–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Because the doctrine "springs from the de-

sire for judicial economy, rather than from constitutional concerns about federal-state comity," and "is an exception to our jurisdictional mandate from Congress," it "may only be used when 'the clearest of justifications ... warrant[s] dismissal.'" *Rienhardt v. Kelly,* 164 F.3d 1296, 1303 (10th Cir.1999) (quoting *Colorado River,* 424 U.S. at 817–19, 96 S.Ct. 1236).

### 1. Whether the Two Actions Are Parallel

■ To determine whether deferral is appropriate under *Colorado River,* the court must first examine "whether the state and federal proceedings are parallel." *Allen v. Bd. of Educ.,* 68 F.3d 401, 402 (10th Cir. 1995). " 'Suits are parallel if substantially the same parties litigate substantially the same issues in different forums.' The court should 'examine the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings,' resolving any doubt 'in favor of exercising federal jurisdiction.'" *Id.* at 403 (quoting *Fox v. Maulding,* 16 F.3d 1079, 1082 (10th Cir.1994)).

■ Blue Rhino contends that the state and federal actions present different issues and involve different parties. Stockgrowers contends that the state and federal actions arise out of the same circumstances and facts and are, therefore, parallel. Because the parties disagree regarding whether the state and federal court actions are parallel, this court will examine the pleadings in both cases and the contentions of the parties to determine whether the two actions are, in fact, parallel.

Stockgrowers' state court action is against the guarantors of BBQ Express, who is a debtor in bankruptcy, to recover on multiple

---

1. The court notes other bases for abstention are inapplicable. Specifically, pursuant to the doctrine established in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), "a federal court [may] stay its hand in those instances where a federal constitutional claim is premised on an unsettled question of state law, whose determination by the state court might avoid or modify the constitutional issue." *Vinyard v. King,* 655 F.2d 1016, 1018 (10th Cir.1981) (citing *Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). The *Pullman* doctrine is inapplicable here because there is no

federal constitutional claim. In addition, the court notes that *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), recognized abstention may be proper "when a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Ankenbrandt v. Richards,* 504 U.S. 689, 705–06, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The court finds *Burford* inapplicable because Stockgrowers has made no showing that the state law issues in this case concern state regulatory and policy interests.

security agreements. Stockgrowers joined Blue Rhino as a defendant to that suit to quiet title in assets, foreclose its security interests in assets and enjoin Blue Rhino from removing assets allegedly belonging to BBQ Express. Stockgrowers claims that it seeks recovery for conversion of collateral that is the subject matter of the lawsuit Blue Rhino filed in federal court. Stockgrowers further claims that its security interest in the property at issue is superior to all of the state court defendants, including Blue Rhino. Blue Rhino filed a motion to dismiss or stay the state court action, which the state court denied on August 8, 2003.

Blue Rhino's federal court action is against only Stockgrowers, to recover Blue Rhino's property that it alleges Stockgrowers converted and to recover damages it alleges it incurred as a result of Stockgrowers' conversion of its property. Blue Rhino has named none of the other parties involved in the state court action.

While the state court action involves more parties than the federal court action, Stockgrowers and Blue Rhino are both parties in the state court action. Moreover, the court finds that, based on the complaints in both lawsuits, the subject matter and the underlying facts of the two suits are the same. Both lawsuits arise out of BBQ Express' bankruptcy and the subsequent efforts of the parties to secure their respective interests in assets that were in BBQ Express' possession at the time the bankruptcy petition was filed. While there are facets to the state court action that involve additional claims or other parties, the court finds that the federal court action is encompassed within the state court action. Both Stockgrowers and Blue Rhino are attempting, through their respective lawsuits, to sort out and recover assets secured by BBQ Express' business or that were in BBQ Express' possession at the time the bankruptcy petition was filed. Moreover, it appears that both Stockgrowers and Blue Rhino respectively claim that they maintained a superior interest in certain property that was in BBQ Express' possession at the time of the bankruptcy filing. Therefore, the court finds that the state and federal actions are parallel and that the *Colorado River* doctrine applies.

### 2. *Colorado River* Factors

■ If the proceedings are parallel, the court applies six factors to determine whether to stay or dismiss a federal court action based on pending state court proceedings. These factors are: 1) whether either court has assumed jurisdiction over property; 2) whether the federal forum is inconvenient to the parties; 3) the avoidance of piecemeal litigation; 4) the order in which the courts obtained jurisdiction and the progress of the two cases; 5) which forum's substantive law governs the merits of the litigation; and 6) the adequacy of the state forum to protect the rights of the parties. *Ins. Fin. Corp. v. Evolution, Inc.*, No. Civ. A. 00–2386–KHV, 2000 WL 33314113, *1, *2 (D.Kan. Nov.28, 2000); *see also Colorado River*, 424 U.S. at 819, 96 S.Ct. 1236; *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The test should be applied in a pragmatic, flexible manner, with no one factor determinative. The weight given any one factor may vary from case to case. *See Shadwick v. Butler Nat'l Corp.*, 950 F.Supp. 302, 304 (D.Kan.1996); *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. Any doubt in the application of the factors should result in favor of exercising federal jurisdiction. *Waddell & Reed Fin., Inc., v. Torchmark Corp.*, 180 F.Supp.2d 1235, 1241 (D.Kan. 2001).

#### a. Whether the State Court has Assumed Jurisdiction Over Property

■ Stockgrowers points out that the state court has assumed jurisdiction over the property in question because the state court action was filed before the federal court action. Moreover, the court notes that on August 8, 2003, the state court denied Blue Rhino's motion to dismiss the state court action for lack of subject matter jurisdiction. Thus, it appears the state court has assumed jurisdiction over the parties and property in question. This factor thus weighs in favor of abstention.

### b. Convenience of the Federal Forum

Stockgrowers claims that the federal forum is less convenient to the parties because Stockgrowers is located in Ashland, Kansas, and all the transactions with both Blue Rhino and the other state court defendants occurred in Ashland, Kansas, and the surrounding areas. Stockgrowers further claims that all property at issue was (or still is) located in western Kansas and thus the federal forum is not convenient for the parties, except Blue Rhino. Blue Rhino argues that the federal forum is not inconvenient to the two parties to this action, and that Stockgrowers has participated in federal cases in Kansas before. This factor weighs neither in favor of nor against abstention.

### c. Avoidance of Piecemeal Litigation

Avoidance of piecemeal litigation is an important rationale behind the *Colorado River* doctrine. In this case, the court believes that duplication of proceedings will occur unless either this court or the state court enters a stay, because Stockgrowers' state court complaint and Blue Rhino's federal court complaint rely on the same underlying facts. If this court does not stay or dismiss the federal action, it will be presiding over a case similar to the one currently before the state court, at least insofar as Blue Rhino is involved in the state court case.[2] While Blue Rhino argues that it has no claims pending in the state court action, and is not required to state any claims in the state court action, this court believes that the most efficient use of judicial resources would be to resolve Stockgrowers' and Blue Rhino's claims in the same proceeding. Blue Rhino's claims, while different than those stated by Stockgrowers in the state court action, are a direct result of the parties' attempts to determine proper allocation of the assets in BBQ Express' possession at the time of the bankruptcy filing. While Blue Rhino alleges that Stockgrowers converted Blue Rhino's assets that were in BBQ Express' possession in August 2002, and thus injured Blue Rhino's business, those claims are a direct result of Stockgrowers' attempt to determine proper allocation of BBQ Express' assets and preserve its rights as a creditor of BBQ Express. Moreover, Stockgrowers has indicated its intent to move to join the parties from the state court action in the federal court action if the federal court action is not stayed or dismissed. For all those reasons, the most prudent course of action would be for this court to stay the federal proceedings. A federal action at this point will do nothing more than waste the resources of both the parties and the court. *See Ins. Fin. Corp.*, 2000 WL 33314113 at *3. Therefore, this factor of the *Colorado River* doctrine weighs heavily in favor of abstention.

### d. Order in which the Courts Obtained Jurisdiction

Stockgrowers filed the state court action on February 13, 2003; Blue Rhino filed the federal court action on March 5, 2003. Neither case has progressed beyond initial proceedings and motions to dismiss. This court has stayed discovery and all proceedings in this case pending the ruling on Stockgrowers' Motion to Dismiss. Moreover, the state court ruled in August 2003, that it would retain jurisdiction over Blue Rhino as a party to the case and is proceeding with the state court case. As a result, this factor weighs in favor of abstention.

### e. Substantive Law Governing the Litigation

The factor regarding which forum's substantive law governs the merits of the litigation also weighs in favor of abstention. A federal court sitting in diversity must apply the law of the forum state, including its choice-of-law rules, to all substantive issues. *See Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 128 (10th Cir.1994). In its complaint, Blue Rhino has alleged no federal claims. Presumably, Kansas law will apply to Blue Rhino's claims.

---

**2.** Blue Rhino argued in its opposition to the motion before this court that the court should not dismiss or stay this action because Blue Rhino has filed a motion to dismiss Stockgrowers' state court action, claiming that Stockgrowers' action involves property that belongs to the debtor in bankruptcy and that the claims are barred by the bankruptcy stay. However, as previously noted, the state court denied Blue Rhino's motion to dismiss on August 8, 2003.

In the state court action, Stockgrowers also has alleged only claims arising out of Kansas law. Therefore, Kansas law will apply to the parties' claims whether they are litigated in state or federal court.

### f. Adequacy of State Forum

The final *Colorado River* factor, the adequacy of the state forum to protect the rights of the parties, also favors abstention. Blue Rhino does not argue that the state forum is inadequate to protect the rights of the parties. However, Blue Rhino contends that Stockgrowers violated the parties' agreement to abstain from litigation while they worked out a settlement by filing a suit in state court without first warning Blue Rhino of its intention to do so. Blue Rhino claims that Stockgrowers violated a "truce" between the parties and that Blue Rhino should not be punished by Stockgrowers' violation of the truce and Stockgrowers' choice of state court as the forum to litigate the claims. However, the court finds nothing in the record to support a finding that the parties agreed to refrain from filing suit. Moreover, despite its express preference to be in federal court, Blue Rhino has set forth no reasons to dispute the adequacy of the state forum to protect the rights of the parties.

In light of the above analysis, the applicable *Colorado River* factors favor stay of this case.

**IT IS THEREFORE ORDERED** that Stockgrowers' Motion to Dismiss (Doc. 2) is denied as it relates to dismissal of the complaint.

**IT IS FURTHER ORDERED** that this case is stayed pending the outcome of the state court proceedings. The parties are ordered to file a notice of the state court judgment with this court within 30 days after it is entered.